UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE G. PADILLA,<br><br>          Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>          Defendant. | Case No. CV 15-7248 JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

**I.   SUMMARY**

On September 15, 2015, George G. Padilla ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15.

///

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On December 8, 2007, plaintiff filed an application for Disability Insurance Benefits alleging disability on July 31, 2007, due to cervical disc disease, pain in both feet, and right shoulder rheumatoid arthritis. (Administrative Record ("AR") 21, 142, 169). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel), and vocational and medical experts on July 15, 2010 ("Pre-Remand Hearing"). (AR 41-57).

On September 20, 2010, the ALJ determined that plaintiff was not disabled through the date of the decision ("Pre-Remand Decision"). (AR 21-30). The Appeals Council denied plaintiff's application for review of the Pre-Remand Decision. (AR 1).

On September 21, 2012, this Court entered judgment reversing and remanding the case for further proceedings, in part, because the ALJ's findings at step 5 of the sequential evaluation process were not supported by substantial evidence. (AR 735-45). The Appeals Council, in turn, vacated the Pre-Remand Decision and remanded the case to the ALJ with instructions to "offer [plaintiff] the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." (AR 752). On remand, the ALJ held a hearing on September 10, 2013 ("Post-Remand Hearing"), during which the ALJ heard testimony from plaintiff (who was represented by counsel) and a vocational expert. (AR 673-703).

On September 24, 2013, the ALJ determined that plaintiff was not disabled through December 31, 2012 (*i.e.*, the date last insured) ("Post-Remand Decision").

(AR 654-66). Specifically, the ALJ found that through the date last insured: (1) plaintiff suffered from the following severe impairments: chronic and recurrent neck pain syndrome, and upper extremity radiculopathy (AR 656); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 658-59); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 404.1567(b)) with additional limitations[1] (AR 659); (4) plaintiff could not perform any past relevant work (AR 664-65); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically Counter Clerk, Bakery Worker, and Laminating Machine Off-Bearer (AR 665-66); and (6) plaintiff's allegations regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely credible (AR 660, 663-64).

The Appeals Council rejected plaintiff's exceptions to the Post-Remand Decision. (AR 634).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the

---

[1]The ALJ determined that plaintiff: (i) could lift and carry 20 pounds occasionally and 10 pounds frequently; (ii) could stand and walk six out of eight hours, and sit six out of eight hours; (iii) could push and pull up to lifting and carrying limits; (iv) could occasionally climb ladders, but could not climb ropes or scaffolds; (v) could occasionally balance, stoop, kneel, and crouch, but could not crawl; (vi) could occasionally reach in all directions; and (vii) could not be exposed to extremes of cold, or to unprotected heights or hazardous equipment. (AR 659).

claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is required to use the following five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

///

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).  To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  An ALJ's decision to deny benefits must be upheld if the evidence could reasonably support either affirming or reversing the decision.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).  Nonetheless, a court may not affirm "simply by isolating a 'specific quantum of supporting evidence.'"  Robbins, 466 F.3d at 882 (citation omitted).  In addition, federal courts may review only the reasoning in the administrative decision itself, and may affirm a denial of benefits only for the reasons upon which the ALJ actually relied.  Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

Even when an ALJ's decision contains error, it must be affirmed if the error was harmless.  Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014).  An ALJ's error is harmless if (1) it was inconsequential to the ultimate nondisability determination; or (2) despite the

///

error, the ALJ's path may reasonably be discerned, even if the ALJ's decision was drafted with less than ideal clarity. Id. (citation and quotation marks omitted).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted). Where a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted); Treichler, 775 F.3d at 1099-1102 (where agency errs in reaching decision to deny benefits and error is not harmless, remand for additional investigation or explanation ordinarily appropriate).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred in evaluating the credibility of plaintiff's subjective complaints. (Plaintiff's Motion at 5-13). The Court agrees. As the Court cannot find the ALJ's errors harmless, a remand is warranted.

### A. Pertinent Law

When a claimant provides "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged," and there is no affirmative finding of malingering, the ALJ may discount the credibility of the claimant's subjective complaints only by "providing specific, clear and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 488-89 (citation and internal quotation marks omitted). This requirement is very difficult to meet. See Garrison, 759 F.3d at 1015 (citation omitted).

An ALJ's credibility determination must be specific enough to permit a reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's subjective complaints. Brown-Hunter, 806 F.3d at 493 (citation and quotation marks omitted). Consequently, an ALJ must identify the specific testimony he or she finds not credible, provide "clear and convincing reasons"

why that particular testimony lacks credibility, and identify the specific evidence which undermines the claimant's subjective complaints. See id. at 489, 493-94 (citation omitted). "General findings are insufficient[.]" Id. at 493 (citations and quotation marks omitted). Nonetheless, if the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to second-guess it. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); see also Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (Evaluation of a claimant's credibility and resolution of conflicts in the testimony are solely functions of the Commissioner.) (citation omitted).

**B.     Analysis**

First, the ALJ found plaintiff's allegations of disabling limitations in activities of daily living not entirely credible, stating:

> [The plaintiff] lives alone and there is no indication in the file he has poor hygiene or that there are complaints of an unkempt living space. Therefore, it is presumed [plaintiff] is still capable of caring for his home and his personal hygiene in spite of his apparent limitations in this area.

(AR 664) (citing Exs. 6E at 2-3 [AR 181-82], 11E at 5 [AR 210]).

"Inconsistencies between a claimant's testimony and the claimant's reported activities [may] provide a valid reason for an adverse credibility determination." Burrell v. Colvin, 775 F.3d 1133, 1137-38 (9th Cir. 2014) (citation omitted). Here, however, the ALJ did not specify *which* of plaintiff's daily activities purportedly conflicted with *which* of plaintiff's subjective complaints. A general finding that plaintiff's collective daily activities are inconsistent with the alleged severity of some or all of plaintiff's subjective complaints is not sufficiently specific to permit the Court to determine whether the ALJ discounted plaintiff's credibility on permissible grounds. See, e.g., Brown-Hunter, 806 F.3d at 494 (legal error where ALJ failed to link testimony found not credible "to the

7

particular parts of the record supporting [the ALJ's] non-credibility determination") (citation omitted).

Even so, the ALJ's credibility findings in this respect are not supported by substantial evidence. For example, the mere fact that plaintiff "live[d] alone" and there was no affirmative indication in the record that plaintiff, in fact, had "poor hygiene" or "an unkempt living space," is not a quantum of evidence from which a reasonable person could infer – as the ALJ suggests (AR 664) – that (a) plaintiff, in fact, had been adequately caring for himself and his home; and (b) in doing so, plaintiff had engaged in daily activities that were inconsistent with plaintiff's alleged disabling symptoms. To the contrary, while plaintiff indicated in his function report that he prepared his own meals, plaintiff also stated that he did so only "once or twice daily" for only "5-10 minutes," and his meals consisted of "[m]ostly frozen or canned foods with bread or tortilla." (AR 183). Plaintiff also indicated in his function report that he was able do basic household chores (*i.e.*, laundry and cleaning), but elaborated that he could only do "1-2 loads" of laundry on average "once or twice every two weeks" for 30-40 minutes, and that he would "[vacuum], sweep and mop" only about "once a month" and "on different days" to the extent he was "able." (AR 183). At the Pre-Remand Hearing, plaintiff testified that he would "try to do a little bit around the house, of general house cleaning" but his movements progressively caused more pain. (AR 46).

Even assuming that plaintiff retained the ability to carry on certain minimal activities of daily living, the ALJ did not find, nor does the record reflect, that such activities "consume[d] a substantial part of [plaintiff's] day," and thus such evidence does not constitute a clear and convincing reason for discounting the claimant's credibility. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.") (citation omitted);

see also id. at 1049 ("One does not need to be 'utterly incapacitated' in order to be disabled.") (citation omitted); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.") (citations omitted); see generally Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("[I]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain.").

      Second, the ALJ also wrote that plaintiff's credibility was "affected by the conservative treatment modalities used without the recommendation for more invasive treatment possibilities." (AR 663-64). Receipt of only conservative treatment can undermine a claimant's credibility. See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (citation and quotation marks omitted), cert. denied, 552 U.S. 1141 (2008). Here, however, substantial evidence does not support the ALJ's findings in this respect. For example, the ALJ stated that plaintiff's "primary treatment" consisted of "chiropractic adjustments and related therapy from his treating chiropractor," and that plaintiff "did not have additional pain management therapy[.]" (AR 663). Medical records reflect, however, that in addition to chiropractic treatment, plaintiff also attended multiple sessions of physical therapy from 2007 to 2008 based on a referral from Dr. Wail Shoga, plaintiff's treating osteopathic physician. (AR 277-78, 305-38). There is also evidence that plaintiff regularly used a TENS unit for pain relief.[2] (AR 210, 478–96, 521-38, 559). The ALJ also stated that there was "no evidence . . . of a recommendation of surgical intervention for [plaintiff's] spine impairments." (AR 663). At the Pre-Remand Hearing, however, plaintiff testified that "two doctors" (*i.e.*, "Dr. Chen and Dr.

---

[2]"TENS, or transcutaneous electrical nerve stimulation, is a back pain treatment that uses low voltage electric current to relieve pain." TENS for Back Pain, WebMD web site, available at http://www.webmd.com/back-pain/guide/tens-for-back-pain

1  Withers") had recommended surgery for his back. (AR 47). Moreover, in a
2  January 2, 2008 progress note, Dr. Shoga indicated that he had encouraged
3  plaintiff to consider prior recommendations from neurosurgeons that plaintiff
4  should have a "series of 3 epidural injections" as well as "surgical intervention,"
5  essentially because plaintiff had not responded well to physical therapy and
6  chiropractic treatment.[3] (AR 279-80, 413-14). The ALJ's incorrect
7  characterization of the medical evidence calls into question the validity of both the
8  ALJ's evaluation of plaintiff's credibility and the ALJ's decision as a whole. See
9  Regennitter v. Commissioner, 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific
10 finding" that consists of an "inaccurate characterization of the evidence" cannot
11 support an adverse credibility determination); cf., e.g., Valenzuela v. Astrue, 247
12 Fed. Appx. 927, 929 (9th Cir. 2007) (finding ALJ's credibility determination
13 unsupported by substantial evidence where it was based in part on "inaccurate
14 characterization" of claimant's testimony).

15 The record also reflects that plaintiff was prescribed, among other
16 medications, cyclobenzaprine, a muscle relaxant, and a hydrocodone-
17 acetaminophen combination,[4] a narcotic pain reliever used to treat moderate to
18 severe pain (AR 276, 277, 279, 415), and that only a few months before the
19 disability onset date, plaintiff had received an epidural injection (AR 246-47, 250,
20 413). In light of the foregoing and the medical evidence as a whole, the Court
21 cannot conclude that substantial evidence supports the ALJ's characterization of

---

[3]Plaintiff essentially testified, in pertinent part, that he initially did not want to pursue surgery because of an error with his first epidural injection, and because he wanted to try a less invasive approach (*i.e.*, chiropractic care) first. (AR 47). Plaintiff also testified that he did not pursue surgery at a later date because he had lost his insurance. (AR 47); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted) (ALJ may not reject symptom testimony where claimant provides "evidence of a good reason" for not pursuing treatment).

[4]See Hydrocodone-Acetaminophen, WebMD web site, available at http://www.webmd.com/drugs/2/drug-251/hydrocodone-acetaminophen-oral/details.

plaintiff's medical treatment was "conservative." Cf., e.g., Christie v. Astrue, 2011 WL 4368189, *4 (C.D. Cal. Sep. 16, 2011) (rejecting ALJ's finding that medical care was "conservative" where claimant who suffered from degenerative disc disease and fibromyalgia had received, inter alia, steroid injections, trigger point injections, epidural shots, and narcotic pain medication) (citation omitted); see also Dillard v. Colvin, 2015 WL 4163094, *3 (C.D. Cal. July 9, 2015) (ALJ's "lay determination" that plaintiff received conservative treatment legally insufficient basis for rejecting plaintiff's subjective symptom testimony where "no medical professional characterized plaintiff's treatment as conservative or incommensurate with her subjective complaints") (citing Schomas v. Colvin, 732 F.3d 702, 709 (7th Cir. 2013) (ALJ's lay assessment that claimant's treatment had been conservative may "impermissibly substitute[] the ALJ's personal observations for the considered judgment of medical professionals") (citations omitted)).

Third, absent any other clear and convincing reason for discounting plaintiff's credibility, the ALJ's final proffered reason – lack of objective medical evidence to support plaintiff's subjective complaints (AR 660-61) – is insufficient to support the ALJ's credibility determination. See Burch, 400 F.3d at 681 (Lack of objective medical evidence to support subjective symptom allegations cannot form the sole basis for discounting pain testimony.).

Finally, since the ALJ's reasons for discrediting plaintiff's statements were not sufficiently specific, the Court is unable to conduct a meaningful review of the ALJ's credibility determination, and thus cannot conclude that the ALJ's errors were harmless. Cf., e.g., Brown-Hunter, 806 F.3d 487, 492 (9th Cir. 2015) (where ALJ fails to specify reasons for finding claimant testimony not credible, "error will usually not be harmless").

Accordingly, a remand is required to permit the ALJ to reassess plaintiff's credibility.

## V. CONCLUSION[5]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[6]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 29, 2016

                                            /s/
                                   Honorable Jacqueline Chooljian
                                   UNITED STATES MAGISTRATE JUDGE

---

[5]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate. On remand, however, the Commissioner may wish to conduct a *de novo* review of the medical evidence. The Post-Remand Decision, in part, appears not to have addressed significant probative medical evidence beyond medical opinions, and also relied in large part on conclusions which seem to be based solely on the ALJ's own, lay interpretation of raw medical data. (AR 658, 660-63).

[6]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, "additional proceedings can remedy defects in the original administrative proceeding. . . ." Garrison, 759 F.3d at 1019 (citation and internal quotation marks omitted); see also Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (remand is an option where the ALJ stated invalid reasons for rejecting a claimant's excess pain testimony).